PER CURIAM.
 

 Appellant, Angela Wicklow, is entitled to a new trial after her conviction and sentence for robbery with a firearm. The cumulative effect of improper prosecutorial comments in closing argument which elicited sympathy for the victim, suggested improper defense tactics, disparaged defense counsel and improperly bolstered the credibility of a key witness all combine to compel this result. We also write to discuss the trial court’s decision to deny the jury’s request for a read-back of the same key witness’s testimony.
 

 The State charged Wicklow with robbing Betsy Colon with a firearm inside Colon’s home while Wicklow’s boyfriend, Brandon Christiano, waited outside. The defense theory was that this was not a robbery of Colon, but that Colon actually threatened Wicklow at gunpoint as the result of a drug transaction gone bad.
 

 The State called Christiano to testify as to the events he observed. Christiano’s testimony was less than conclusive and the defense challenged his credibility. During cross-examination, Christiano testified that he and Wicklow were introduced to Colon because Colon could obtain oxycodone pills and would sell them to Wicklow. Christi-ano acknowledged lying to the police and to his mother about the circumstances surrounding the incident and testified that he told the truth to a second detective only after being asked whether he wanted to be a witness or a suspect.
 

 At the beginning of the State’s rebuttal closing argument, the prosecutor stated, over defense objection, “As is usually the case, the victim is on trial for something.” Later in her closing, the prosecutor also stated, “Brandon Christiano could have been charged with this crime right next to Angela, they could have been sitting right next to each other. The detectives made a decision not to do so based on their inter
 
 *87
 
 view with them. I interviewed Brandon.” At that point, the defense attorney objected, moved to strike and asked for a sidebar. The sidebar contained the following exchange:
 

 [DEFENSE]: There was a deposition, but it wasn’t an interview.
 

 [STATE]: Well, that’s what I’m talking about.
 

 THE COURT: The objection is overruled.
 

 The prosecutor then continued her closing argument as follows:
 

 [STATE]: With Mr. Weinstein and Detective Vogel, even had the detective reread Brandon Miranda, so that if
 
 we
 
 decide after the interview that he needed to be charged, he would be charged. He is not charged and it is irrelevant to the crime that was committed by Angela. Irrelevant.
 

 (emphasis added.)
 

 Finally, at the end of the argument, the prosecutor remarked that “[t]he only conflicts are between the Defense Attorney and the evidence. That’s it. Don’t be manipulated.” After the defense objection to this remark was overruled, the prosecutor concluded, “Don’t be gullible.”
 

 During deliberations, the jury sent a note stating, “Jury would like to' read Brandon’s testimony.” In discussion with counsel, the trial court indicated that it was not inclined to do a read-back because the jurors had the ability to take notes during the trial. This was despite the fact that the defense had requested the read-back and the State did not object. After hearing argument, and one hour after the question was posed, the trial court advised the jury, “to rely on your own recollection of the evidence that was presented in this case.” Nine minutes later, the jury returned a guilty verdict finding that Wick-low actually possessed and discharged the firearm. Thereafter, the trial court sentenced Wicklow to 20 years imprisonment.
 

 Prosecutorial Remarks
 

 Improper prosecutorial closing argument is reviewed under an abuse of discretion standard.
 
 Paul v. State,
 
 958 So.2d 1135, 1136 (Fla. 4th DCA 2007). Comments give rise to error warranting mistrial when they are so prejudicial as to vitiate the entire trial.
 
 Mannarino v. State,
 
 869 So.2d 650, 652 (Fla. 4th DCA 2004).
 

 First, the prosecutor’s comment that, “As is usually the case, the victim is on trial for something,” improperly appealed to the jury for sympathy for the victim. An appeal to the jury for sympathy for the victim creates hostile emotions toward the accused.
 
 Dial v. State,
 
 922 So.2d 1018, 1022 (Fla. 4th DCA 2006);
 
 Johns v. State,
 
 832 So.2d 959, 962 (Fla. 2d DCA 2002). Additionally, this phrase makes improper reference to other cases and suggests that accusing the victim of wrongdoing is simply an improper defense tactic that the prosecutor has seen many times.
 

 Second, when the prosecutor made the following argument later in closing argument, “The only conflicts are between the defense attorney and the evidence. That’s it. Don’t be manipulated ... don’t be gullible,” she was no longer focusing on the evidence, but instead on her perception of the integrity and character of defense counsel. “Gullible,” an adjective, means “easily duped.”
 
 Memam-Webster’s Online Dictionary,
 
 www. merriam-webster.com. In effect, the prosecutor, instead of focusing on the evidence, argued to the jury that defense counsel was trying to manipulate the jury and that if they agreed with his argument then they were being easily duped. Claims of manipulation and deception by opposing counsel have no place in a closing argument. Resorting to personal attacks on defense
 
 *88
 
 counsel is an improper trial tactic which can poison the mind of the jury.
 
 Ryan v. State,
 
 457 So.2d 1084, 1089 (Fla. 4th DCA 1984). Further, improper prosecutorial remarks can constitute reversible error when such remarks may have prejudiced the jury into finding the defendant guilty.
 
 Id.
 
 Although defense counsel raised objections to these comments which the court overruled, it is worthy of note that it is never acceptable for one attorney to effectively impugn the integrity or credibility of opposing counsel before the jury; even in the absence of a contemporaneous objection, such comments about opposing counsel made during closing argument are fundamentally erroneous.
 
 Owens-Corning Fiberglas Corp. v. Crane,
 
 683 So.2d 552, 555 (Fla. 3d DCA 1996).
 

 Finally, the prosecutor’s comment that, “I interviewed Brandon” was also improper. At sidebar, the prosecutor clarified that her remark was in reference to her deposition of Christiano. However, the clarification at sidebar rings hollow because the prosecutor never clarified for the jury that she was referring to a deposition. Reading the comment in context as the jury heard it, the comment is fairly susceptible to interpretation as an attempt “to impress on the jury that the government’s vast investigatory network, apart from the orderly machinery of the trial, knows that the accused is guilty or has non-judicially reached conclusions on relevant facts which tend to show he is guilty.”
 
 Ruiz v. State,
 
 743 So.2d 1, 4 (Fla.1999) (quoting
 
 United States v. Garza,
 
 608 F.2d 659, 662 (5th Cir.1979) (other internal citations omitted)). This comment may have given the jury the impression that the police decided not to charge Christiano because they believed Wicklow was guilty, and that the prosecutor concurred with the decision following her own “interview” with Christiano. This comment bolstered the credibility of Christiano, the same witness whose testimony was the subject of the jury’s read-back request.
 

 The State argues that if the comments were improper, they were nevertheless harmless. We disagree. The harmless error analysis places the burden upon the State, as the beneficiary of the errors, to prove there is “no reasonable possibility that the error contributed to” Wicklow’s conviction.
 
 State v. DiGuilio,
 
 491 So.2d 1129, 1135 (Fla.1986).
 

 As the Florida Supreme Court noted in
 
 McDuffie v. State,
 
 970 So.2d 312, 328 (Fla.2007), the focus of the harmless error test is the effect of the error on the trier of fact. The court further explained that when multiple errors are discovered in a jury trial, a review of the cumulative effect of these errors is appropriate because:
 

 ‘even though there was competent substantial evidence to support a verdict ... and even though each of the alleged errors, standing alone, could be considered harmless, the cumulative effect of such errors [may be] such as to deny to defendant the fair and impartial trial that is the inalienable right of all litigants in this state and this nation.’
 

 Id.
 
 (quoting
 
 Brooks v. State,
 
 918 So.2d 181, 202 (Fla.2005)).
 

 Recently, in
 
 Ventura v. State,
 
 29 So.3d 1086 (Fla.2010), the Florida Supreme Court referenced further guidance it provided regarding the harmless error analysis as follows:
 

 We are not nor do we consider ourselves a super-jury; rather, we are an appellate tribunal charged with the task of determining “whether there is a
 
 reasonable possibility
 
 that the error affected the verdict.” If such a possibility exists, it is our duty to remand for a new trial, which shall be free from the offending
 
 *89
 
 error.
 
 The test is not whether the jury reached what we believe to be the correct result but is, instead, whether a reasonable possibility exists that the constitutional violation contributed to the defendant’s convictions.
 

 Id.
 
 at 1090-91 (quoting
 
 Rigterink v. State,
 
 2 So.3d 221, 255-57 (Fla.2009)).
 

 Taking the errors into consideration as a whole, we find that the trial judge erred in overruling defense counsel’s objections to the prosecutor’s improper comments in closing arguments. We also find there is a reasonable possibility that the combined effect of these errors improperly contributed to Wicklow’s conviction. Therefore, we reverse and remand for a new trial.
 

 Jury’s Request for a Read-Back
 

 Here, the record reflects that the trial court correctly interpreted the jury’s request to “read Brandon’s testimony” as a request for a read-back. The trial court declined the request for a read-back of Christiano’s testimony and advised the jury to rely on its own recollection of the evidence. The only reason the trial court provided on the record for this decision was that the jurors had the opportunity to take notes during the trial. Although under the abuse of discretion standard this reasoning alone does not mandate reversal
 
 [1]
 
 , the fact that the jury sought the read-back serves to underscore the significance of the error created by the prosecutor’s comments bolstering Christiano’s credibility. When the trial court denied the read-back request based solely on the jurors’ ability to take notes, the jury reached a verdict in less than ten minutes. Although we acknowledge the luxury of hindsight and fully-briefed appellate review not available to the trial judge, we respectfully suggest for the future that a better practice would be to make a more complete record of the circumstances leading up to a read-back denial, particularly in those instances where there is a basis for arguing that the denial constituted an abuse of discretion.
 

 In 2007, the Florida Supreme Court adopted Standard Criminal Jury Instruction 4.4.
 
 In re Amendments to Fla. Rules of Civil Procedure, Fla. Rules of Criminal Procedure,
 
 967 So.2d 178 (Fla.2007). The instruction reads:
 

 4.4
 

 READ-BACK OF TESTIMONY
 

 1. Read-Back granted as requested
 

 Members of the jury, you have asked that the following testimony be read-back to you: (describe testimony)
 

 The court reporter will now read the testimony which you have requested.
 

 OR
 

 2. Read-Back Deferred
 

 Members of the jury, I have discussed with the attorneys your request to have certain testimony read-back to you. It will take approximately (amount of time) to have the court reporter prepare and read-back the requested testimony.
 

 I now direct you to return to the jury room and discuss your request further. If you are not able to resolve your question about the requested testimony by relying on your collective memory, then you should write down as specific a description as possible of the part of the witness(es)’ testimony which you want to hear again. Make your request for reading back testimony as specific as possible.
 

 3. Read-Back Denied
 

 
 *90
 
 Members of the jury, you have asked that the following testimony be read-back to you: (describe testimony)
 

 I am not able to grant your request.
 

 Fla. Std. Jury Instr. (Crim.) 4.4.
 

 Option two of this instruction puts in the jury’s hands the ability to determine the read-back’s importance. The trial court advises the jury regarding the time and effort involved in providing the read-back and then allows the jury to consider those circumstances in determining whether they need a read-back to reach a fair verdict.
 

 Although we reiterate that in this circumstance the refusal to provide a read-back on the basis that the jury was able to take notes is not an abuse of discretion, we urge trial judges to use the above-referenced instruction and, when possible, make a more complete record by identifying all circumstances which affect the read-back decision.
 

 We find no merit in Wicklow’s other arguments.
 

 Reversed and remanded.
 

 TAYLOR, CIKLIN, JJ., and BLANC, PETER D, Associate Judge, concur.
 

 [1]
 

 .
 
 See Francis v. State,
 
 808 So.2d 110, 130 (Fla.2001) ("trial judges have broad discretion in deciding whether to read-back testimony").